# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| OCWEN LOAN SERVICING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:18-cv-44-RP |
| | § | |
| SHAWN M. ALOSI, LINDSAY M. | § | |
| ALOSI, and WENDY LEE ALOSI, | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF GORDON W. GREEN

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following statements are true and correct:

1.      "My name is Gordon W. Green.  I am over the age of 21 years and am fully competent to make this Declaration.  All statements of fact made herein are true, correct, and within my personal knowledge.

2.      I am an attorney at Mackie Wolf Zientz & Mann, P.C. ("MWZM"), attorneys for Plaintiff Ocwen Loan Servicing, LLC ("Ocwen" or "Plaintiff"), in this cause.

3.      I am an attorney licensed to practice in the State of Texas and am a member of the bar of the United States District Court for the Western District of Texas. I am currently an attorney in the litigation department of the law firm of MWZM located in Dallas, Texas. I am in good standing with respect to the State Bar of Texas.  A true and correct copy of my resume is attached hereto as Exhibit A-1.

4.      This firm was retained by Ocwen to pursue a judicial foreclosure against Defendants Shawn M. Alosi, Lindsay M. Alosi, and Wendy Lee Alosi ("Defendants") and enforce its interest in certain real property as a result of Defendants' default under the Note and

Security Instrument agreement.  The legal professionals of MWZM with whom I worked in providing these services are at all relevant times attorneys licensed by the State of Texas, in good standing and experienced in the areas of business, real estate, and commercial litigation practice. Without waiving the attorney-client privilege, the subject matter of the counsel and representation provided to Ocwen by MWZM legal professionals included, but was not limited to: filing of the Original Complaint in this Court; review and analysis of the loan documents at issue; preparation and filing of motion for default judgment and related filings; preparation and filing of responses to Show Cause Order and related filings; preparation of the Amended Motion for Default Judgment and Notice of Dismissal of Defendant Wendy Lee Alosi; and preparation of Ocwen's Motion for Award of Attorneys' Fees and related briefing.

5.     The reasonable incurred attorneys' fees are $4,570.50 to prosecute Ocwen's claims for enforcement of its interest in certain real property.

6.     I have become familiar with the legal services necessary to handle claims based on and the reasonable charges for such legal services in the United States District Court for the Western District of Texas and within the State of Texas.

7.     In considering reasonable attorneys' fees in this case, I have considered the time and labor involved; the difficulty of the issues presented; the experience, reputation and ability of the attorneys involved in pursuing this claim; the skills requisite to properly conduct the case; customary charges of the Bar and awards in similar cases; and the amount in controversy.

8.     Based upon my knowledge and experience with similar litigation in the state and federal courts in Texas, and applying the facts and factors set out above, it is my opinion that the sum of $4,570.50 are reasonable attorneys' fees for prosecuting Ocwen's claims for the

enforcement of its interest in certain real property as a result of Defendants' default of under the Note and Security Instrument.

9.      If any party files post-judgment motion, a reasonable fee for Ocwen would be $2,500.00.  If this case is appealed to the court of appeals, a reasonable fee for Ocwen would be an additional $5,000.00. If this case is appealed to the United States Supreme Court, a reasonable fee for Ocwen would be an additional $2,500.00.

FURTHER DECLARANT SAYETH NOT."

Signed this 19th day of October, 2018.

_____

**GORDON W. GREEN**

# EXHIBIT A-1

# GORDON W. GREEN

817.247.5680 • gordon.w.green@outlook.com • 1801 W. 10th St., #3, Dallas, TX 75208

## EXPERIENCE

**MACKIE WOLF ZIENTZ & MANN, P.C.,** Dallas, TX                                      2017-Present
*Litigation Associate*
Represent clients in the mortgage banking and financial services industries in various litigation matters, including wrongful foreclosure, title curative, and adversary proceedings in bankruptcy.  Regular court appearances in federal and state court, as well as bankruptcy and probate court.

**ALDRIDGE PITE, LLP,** Dallas, TX                                      2015-2017
*Bankruptcy Associate*
Represented financial institutions, in connection with mortgage defaults, restructurings, loss mitigation, home retention and other real estate related matters.  Scope of work primarily involved representation of clients in Ch. 7, 11, and 13 bankruptcy proceedings.  Representation covers all federal districts in Texas.

**JOYCE LINDAUER, ATTORNEY AT LAW,** Dallas, TX                                      2012-2015
*Bankruptcy Associate, also Summer Associate, Summer 2011*
Represented and advised clients in commercial and bankruptcy litigation and restructurings, as well as alternative dispute resolution. Conducted plan drafting and confirmation hearings, and represented debtors in 341 meetings, cash collateral matters, and adversary proceedings.

## ORGANIZATIONS

**DALLAS ASSOCIATION OF YOUNG LAWYERS FOUNDATION**
*Fellow*                                      2017-Present

## INTERNSHIPS

**THE HONORABLE HARLIN D. HALE**
**U.S. BANKRUPTCY COURT,** Northern District of Texas at Dallas                  Summer 2010
*Judicial Intern*

**JUSTICE MARY L. MURPHY**
**TX COURT OF APPEALS,** Fifth District of Texas at Dallas                  Summer 2010
*Judicial Intern*

## EDUCATION

**PEPPERDINE UNIVERSITY SCHOOL OF LAW,** J.D.                                      May 2012
*Dispute Resolution Law Journal,* Literary Citation Editor

**UNIVERSITY OF TEXAS AT AUSTIN,** B.A. in History and Government                  December 2007

## ADMITTED

Texas State Bar
United States Bankruptcy Court for the Northern, Eastern, Western, and Southern Districts of Texas
United States District Court for the Northern, Eastern, Western, and Southern Districts of Texas

# EXHIBIT B

| Invoice Date |
| --- |
| 04/25/2018 |

**Mackie Wolf Zientz & Mann, P.C.**
14160 N. Dallas Pkwy Ste. 900
Dallas, TX 75254
Phone: (214) 635-2650
Fax: (214) 635-2686

**INVOICE**

Ocwen Loan Servicing
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

Loan No:
Reference:
Property Addr: 1411 ASHLEY DRIVE
NOLANVILLE, TX 76559
Our File: 15-001044-670-6

Loan Type: FHA; Case Type: Litigation

BILLING SUMMARY:

| COSTS | | | |
| --- | --- | --- | --- |
| **DATE** | **COST DESCRIPTION** | **RECOVERABLE** | **AMOUNT** |
| 02/12/2018 | Filing Costs - Original Complaint- Recoverable | Yes | $400.00 |
| 02/26/2018 | Process Server Costs - served Lindsay Alosi- Recoverable | Yes | $144.00 |
| 02/28/2018 | Process Server Costs - served Wendy Alosi- Recoverable | Yes | $135.00 |
| 03/01/2018 | Process Server Costs - served Shawn Alosi- Recoverable | Yes | $87.00 |

| HOURLY FEES | | | | | |
| --- | --- | --- | --- | --- | --- |
| **DATE** | **FEE DESCRIPTION** | **RECOVERABLE** | **RATE** | **HOURS** | **AMOUNT** |
| 02/09/2018 | Paralegal Fee-Hourly- Recoverable Jackson, Erin | Yes | $95.00 | 0.20 | $19.00 |
| Correspondence requesting NMS approval prior to milestone event | | | | | |
| 02/09/2018 | Associate Attorney Fee-Hourly- Recoverable Green, Gordon | Yes | $190.00 | 2.00 | $380.00 |
| Drafted Original Complaint for judicial foreclosure. | | | | | |
| 02/09/2018 | Senior Attorney Fee-Hourly- Recoverable Cronenwett, Mark | Yes | $215.00 | 0.40 | $86.00 |
| Review new matter. | | | | | |
| 02/12/2018 | Associate Attorney Fee-Hourly- Recoverable Green, Gordon | Yes | $190.00 | 0.40 | $76.00 |
| Research borrowers` personal information in preparing Complaint for filing. | | | | | |
| 02/12/2018 | Paralegal Fee-Hourly- Recoverable Jackson, Erin | Yes | $95.00 | 0.40 | $38.00 |
| Research and obtain SCRA/Pacer results for each Defendant | | | | | |
| 02/12/2018 | Paralegal Fee-Hourly- Recoverable Goad, Brandie | Yes | $95.00 | 0.30 | $28.50 |
| Paralegal Fee-Hourly - Prepared Summons Request on All Defendants | | | | | |
| 02/12/2018 | Paralegal Fee-Hourly- Recoverable Goad, Brandie | Yes | $95.00 | 0.20 | $19.00 |
| Paralegal Fee-Hourly - Prepared Civil Cover Sheet | | | | | |
| 02/20/2018 | Paralegal Fee-Hourly- Recoverable Jackson, Erin | Yes | $95.00 | 0.40 | $38.00 |
| Receipt and review of summons issued by court. | | | | | |
| 02/20/2018 | Paralegal Fee-Hourly- Recoverable Jackson, Erin | Yes | $95.00 | 0.30 | $28.50 |
| Correspondence with process server requesting attempted service of named defendants. | | | | | |

| 02/20/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $190.00 | 0.30 | $57.00 |
|---|---|---|---|---|---|
| Review docket and file to determine that all summons are issued. | | | | | |
| 02/20/2018 | Senior Attorney Fee-Hourly-Recoverable Cronenwett, Mark | Yes | $215.00 | 0.20 | $43.00 |
| Review status of service. | | | | | |
| 03/02/2018 | Paralegal Fee-Hourly-Recoverable Jackson, Erin | Yes | $95.00 | 0.20 | $19.00 |
| Correspondence with process server regarding status of service.  Notified attorney of results. | | | | | |
| 03/05/2018 | Paralegal Fee-Hourly-Recoverable Jackson, Erin | Yes | $95.00 | 0.20 | $19.00 |
| Receipt and review of returns of service from process server | | | | | |
| 03/06/2018 | Senior Attorney Fee-Hourly-Recoverable Cronenwett, Mark | Yes | $215.00 | 0.10 | $21.50 |
| Receipt and review return of service. | | | | | |
| 03/09/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Reviewed return of service for status of service on all parties. | | | | | |

| Invoice Date |
| --- |
| 06/20/2018 |

**Invoice Number**

Mackie Wolf Zientz & Mann, P.C.
14160 N. Dallas Pkwy Ste. 900
Dallas, TX 75254
Phone: (214) 635-2650
Fax: (214) 635-2686

## INVOICE

Ocwen Loan Servicing
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

Loan No▮
Reference:
Property Addr: 1411 ASHLEY DRIVE
NOLANVILLE, TX 76559
Our File: 15-001044-670-6

Loan Type: FHA; Case Type: Litigation

BILLING SUMMARY:

| HOURLY FEES | | | | | |
| --- | --- | --- | --- | --- | --- |
| **DATE** | **FEE DESCRIPTION** | **RECOVERABLE** | **RATE** | **HOURS** | **AMOUNT** |
| 04/02/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.10 | $21.50 |
| Review personal information on Defendants in preparation of MDJ | | | | | |
| 04/03/2018 | Hourly Attorney Fees Escobedo, Rosalie | N/A | $95.00 | 0.20 | $19.00 |
| Reviewed case status. | | | | | |
| 04/05/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Reviewed and analyzed status of litigation to estimate date of completion. | | | | | |
| 04/16/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.30 | $64.50 |
| Reviewed file, pleadings, and local rules to analyze status of litigation and ripeness for entry of default | | | | | |
| 04/26/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Reviewed and analyzed file and pleadings for update in status of litigation | | | | | |
| 05/01/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.10 | $21.50 |
| Reviewed file for status of default judgment | | | | | |
| 05/11/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.10 | $21.50 |
| Reviewed and analyzed file for status of default judgment | | | | | |
| 05/15/2018 | Paralegal Fee-Hourly-Recoverable Schmidt, Rathikane | Yes | $95.00 | 0.20 | $19.00 |
| Review case status. | | | | | |
| 05/15/2018 | Paralegal Fee-Hourly-Recoverable Escobedo, Rosalie | Yes | $95.00 | 0.20 | $19.00 |
| Reviewed case states and organized information for purposes of moving the file forward. | | | | | |



| Invoice Date |
| --- |
| 09/18/2018 |

| Invoice Number |
| --- |
| 241536 |

**Mackie Wolf Zientz & Mann, P.C.**
14160 N. Dallas Pkwy Ste. 900
Dallas, TX 75254
Phone: (214) 635-2650
Fax: (214) 635-2686

### INVOICE

Ocwen Loan Servicing
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

Loan No: 307249737
Reference:
Property Addr: 1411 ASHLEY DRIVE
NOLANVILLE, TX 76559
Our File: 15-001044-670-6

Loan Type: FHA; Case Type: Litigation

BILLING SUMMARY:

| HOURLY FEES | | | | | |
| --- | --- | --- | --- | --- | --- |
| **DATE** | **FEE DESCRIPTION** | **RECOVERABLE** | **RATE** | **HOURS** | **AMOUNT** |
| 03/29/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 1.50 | $322.50 |
| Drafted Motion for Default Judgment and Request for Clerk`s Entry of Default | | | | | |
| 03/30/2018 | Paralegal Fee-Hourly-Recoverable Mullins, Nancy | Yes | $95.00 | 0.20 | $19.00 |
| Correspondence requesting NMS approval prior to filing Motion for Default Judgment. | | | | | |
| 06/14/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.10 | $21.50 |
| Reviewed file for status of litigation and default judgment | | | | | |
| 06/15/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.50 | $107.50 |
| Reviewed file documents to prepare response to show cause order | | | | | |
| 06/15/2018 | Senior Attorney Fee-Hourly-Recoverable Cronenwett, Mark | Yes | $215.00 | 0.20 | $43.00 |
| Receipt and review order for plaintiff to amend pleading. | | | | | |
| 06/20/2018 | Paralegal Fee-Hourly-Recoverable Mullins, Nancy | Yes | $95.00 | 0.20 | $19.00 |
| Review court case status on docket for deadlines and upcoming hearings. | | | | | |
| 06/20/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Reviewed and analyzed case for update in status of litigation | | | | | |
| 06/21/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 1.50 | $322.50 |
| Drafted Response to Show Cause Order, Amended MDJ, and Voluntary Dismissal | | | | | |
| 06/21/2018 | Paralegal Fee-Hourly-Recoverable Mullins, Nancy | Yes | $95.00 | 0.20 | $19.00 |
| Correspondence to obtain NMS approval to proceed with milestone event. | | | | | |
| 06/22/2018 | Paralegal Fee-Hourly-Recoverable Mullins, Nancy | Yes | $95.00 | 0.20 | $19.00 |
| Research and obtain SCRA/Pacer results for each Defendant (3) | | | | | |
| 06/22/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.30 | $64.50 |
| Revised and finalized default judgment and voluntary dismissal | | | | | |

| Date | Description | | | | |
|---|---|---|---|---|---|
| 06/22/2018 | Senior Attorney Fee-Hourly-Recoverable Cronenwett, Mark | Yes | $215.00 | 0.20 | $43.00 |
| Review for default judgment | | | | | |
| 06/24/2018 | Senior Attorney Fee-Hourly-Recoverable Cronenwett, Mark | Yes | $215.00 | 0.10 | $21.50 |
| Receipt and review order mooting motion to dismiss. | | | | | |
| 06/27/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.10 | $21.50 |
| Communicate with Defendant re: status of case | | | | | |
| 06/27/2018 | Senior Attorney Fee-Hourly-Recoverable Cronenwett, Mark | Yes | $215.00 | 0.20 | $43.00 |
| Telephone conference with ex-wife regarding status of case. | | | | | |
| 06/28/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.10 | $21.50 |
| Reviewed and analyzed court`s show cause order | | | | | |
| 06/28/2018 | Paralegal Fee-Hourly-Recoverable Mullins, Nancy | Yes | $95.00 | 0.20 | $19.00 |
| Review court case status for deadlines and upcoming hearings. | | | | | |
| 07/03/2018 | Associate Attorney Fee-Hourly-Recoverable Danaher, Philip | Yes | $215.00 | 0.30 | $64.50 |
| Reviewed file to determine argument in response to show cause order. | | | | | |
| 07/09/2018 | Associate Attorney Fee-Hourly-Recoverable Danaher, Philip | Yes | $215.00 | 0.80 | $172.00 |
| Reviewed file, prepared response to show cause order. | | | | | |
| 07/09/2018 | Senior Attorney Fee-Hourly-Recoverable Cronenwett, Mark | Yes | $215.00 | 0.20 | $43.00 |
| Review and revise response to show cause. | | | | | |
| 07/12/2018 | Associate Attorney Fee-Hourly-Recoverable Danaher, Philip | Yes | $215.00 | 0.20 | $43.00 |
| Receipt and review of report and recommendation to grant motion for default judgment. | | | | | |
| 07/16/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Reviewed and analyzed order from court granting default judgment | | | | | |
| 07/17/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.30 | $64.50 |
| Began preparations for Motion for Atty`s Fees | | | | | |
| 07/18/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 1.20 | $258.00 |
| Drafted Motion for Award of Attorneys Fees and accompanying affidavit, order | | | | | |
| 07/20/2018 | Senior Attorney Fee-Hourly-Recoverable Cronenwett, Mark | Yes | $215.00 | 0.20 | $43.00 |
| Receipt and review magistrate`s recommendation that default judgment be granted. | | | | | |
| 07/24/2018 | Paralegal Fee-Hourly-Recoverable Schmidt, Rathikane | Yes | $95.00 | 0.20 | $19.00 |
| Review case for entry of final judgment. Pending entry from court and judge. | | | | | |

| Invoice Date |
|---|
| 10/19/2018 |

| Invoice Number |
|---|
| ▮▮▮▮▮ |

Mackie Wolf Zientz & Mann, P.C.
14160 N. Dallas Pkwy Ste. 900
Dallas, TX 75254
Phone: (214) 635-2650
Fax: (214) 635-2686

INVOICE

Ocwen Loan Servicing
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

Loan No: ▮▮▮▮▮
Reference:
Property Addr: 1411 ASHLEY DRIVE
NOLANVILLE, TX 76559
Our File: 15-001044-670-6

Loan Type: FHA; Case Type: Litigation

BILLING SUMMARY:

| HOURLY FEES | | | | | |
|---|---|---|---|---|---|
| **DATE** | **FEE DESCRIPTION** | **RECOVERABLE** | **RATE** | **HOURS** | **AMOUNT** |
| 07/30/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Conducted review of file for potential rescission of acceleration issues | | | | | |
| 08/02/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Reviewed and analyzed status of litigation to determine next steps | | | | | |
| 08/10/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.10 | $21.50 |
| Reviewed/analyzed file for status of default judgment | | | | | |
| 08/15/2018 | Paralegal Fee-Hourly-Recoverable Schmidt, Rathikane | Yes | $95.00 | 0.20 | $19.00 |
| Review case for entry of judgment. | | | | | |
| 08/20/2018 | Paralegal Fee-Hourly-Recoverable Duncan-Abraham, Janie | Yes | $95.00 | 0.20 | $19.00 |
| Review court case status on docket for deadlines and upcoming hearings. | | | | | |
| 08/20/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.10 | $21.50 |
| Reviewed file for update in status of legal proceedings | | | | | |
| 09/05/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.10 | $21.50 |
| Reviewed case docket for update on entry of final judgment | | | | | |
| 09/12/2018 | Paralegal Fee-Hourly-Recoverable Schmidt, Rathikane | Yes | $95.00 | 0.10 | $9.50 |
| Reviewed case for status of entry of final judgment. | | | | | |
| 09/23/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Reviewed court`s Order transferring case to other judge and assessed future action | | | | | |
| 09/26/2018 | Paralegal Fee-Hourly-Recoverable Schmidt, Rathikane | Yes | $95.00 | 0.10 | $9.50 |
| Reviewed case for entry of judgment. | | | | | |
| 09/26/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Reviewed/analyzed court`s Order Adopting Recommendation and assessed future action | | | | | |

| 10/05/2018 | Paralegal Fee-Hourly-Recoverable Duncan-Abraham, Janie | Yes | $95.00 | 0.20 | $19.00 |
|---|---|---|---|---|---|
| Review court case status on docket for judgment. Phone call to court coordinator to request status. | | | | | |
| 10/05/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Reviewed the Court`s final judgment granting default judgment and assessed future action | | | | | |
| 10/11/2018 | Paralegal Fee-Hourly-Recoverable Duncan-Abraham, Janie | Yes | $95.00 | 0.20 | $19.00 |
| Receive and review final judgment on Plaintiff`s Motion for Default Judgment. Correspondence regarding Order and status of same. | | | | | |
| 10/12/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Reviewed Final Judgment to assess action for attorneys` fees | | | | | |
| 10/17/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.80 | $172.00 |
| Revised and finalized Motion for Attorneys` Fees | | | | | |
| 10/17/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.20 | $43.00 |
| Finalized Motion for Attorneys` Fees | | | | | |
| 10/19/2018 | Associate Attorney Fee-Hourly-Recoverable Green, Gordon | Yes | $215.00 | 0.30 | $64.50 |
| Revised Motion for Attorneys` Fees to change declarant | | | | | |

Invoice #: ████

Invoice Date: 10/19/2018

Loan No: ████████
Reference:
Property Addr: 1411 ASHLEY DRIVE
NOLANVILLE, TX 76559
Our File: 15-001044-670

| BILLED CASE SUMMARY SINCE INCEPTION | |
|---|---|
| ██████████████████████ | ████████████████ |
| TOTAL | $4,570.50 |

Thank you for the opportunity to be of service.

Please contact invoicing@mwzmlaw.com for any questions or concerns regarding items on this invoice.

# EXHIBIT C



G N M A
G M G B

Return to:  MIDDLEBERG, RIDDLE & GIANNA
            P.O. BOX 2285, SUITE 104
            AUSTIN, TEXAS  78768



[Space Above This Line For Recording Data]

FHA Case No. ▮▮▮

# DEED OF TRUST

MIN: ▮▮▮

THIS DEED OF TRUST ("Security Instrument") is made on the 26th day of July, 2001.
The grantor is SHAWN M. ALOSI AND WIFE, LINDSAY M. ALOSI

("Borrower").

The trustee is JOHN H. HARRIS, whose address is 1300 SOUTH MOPAC EXPRESSWAY, AUSTIN, TEXAS  78746

("Trustee").

The beneficiary is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns).  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.
GUARANTY RESIDENTIAL LENDING, INC. ("Lender") is organized and existing under the laws of the State of NEVADA, and has an address of 1300 S. MOPAC EXPRESSWAY, AUSTIN, TEXAS  78746.
Borrower owes Lender the principal sum of **SIXTY-THREE THOUSAND THREE HUNDRED TWENTY-FOUR and NO/100-----Dollars (U.S. $ 63,324.00).** This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **August 1, 2031.**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in BELL County, Texas:

LOT TWELVE (12), IN BLOCK THREE (3), OF NOLANVILLE ESTATES, FIRST REPLAT, IN THE CITY OF NOLANVILLE, BELL COUNTY, TEXAS, ACCORDING TO THE PLAT OF RECORD IN CABINET A, SLIDE 373-C, PLAT RECORDS OF BELL COUNTY, TEXAS.

VOL. 4452 PAGE 133

which has the address of 1411 ASHLEY DRIVE, [Street]  NOLANVILLE, [City]
TEXAS [State]  76559 [Zip Code]  ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**TEXAS FHA DEED OF TRUST**                    10/95        *(Page 1 of 5 Pages)*

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 90 days from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 90 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

VOL. 4452 PAGE 135

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**22. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

10/95      (Page 4 of 5 Pages)

**23. Purchase Money; Vendor's Lien; Renewal and Extension.** [Complete as appropriate] The Note secured hereby is primarily secured by the Vendor's Lien retained in the Deed conveying Property to Borrower dated or effective the same date as this Security Instrument, which Vendor's Lien has been assigned to Lender, this Security Instrument being additional security therefor.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

- ☐ Condominium Rider
- ☐ Planned Unit Development Rider
- ☐ Other [specify]
- ☐ Growing Equity Rider
- ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
LINDSAY M. ALOSI —Borrower

_____ (Seal)
SHAWN M. ALOSI —Borrower

[Space Below This Line For Acknowledgment]

State of TEXAS          §
County of BELL        §

This instrument was acknowledged before me on the ___27TH___ day of _____JULY_____, 20 _01_, by

SHAWN M. ALOSI AND LINDSAY M. ALOSI

[Notary seal: ELLEN SHAFFER, Notary Public, STATE OF TEXAS, My Comm. Exp. 12/13/02]

_____
Notary Public

_____
(Printed Name)

My commission expires:_____

VOL. 4452 PAGE 137

FILED FOR RECORD

'01 AUG 1 PM 2 40

025097

25077

MONTEITH ABSTRACT & TITLE CO.
2101 E. CENTRAL TEXAS EXPWY. SUITE 101
KILLEEN, TX 76543
(254) 526-7585

A105-10
4



THE STATE OF TEXAS
COUNTY OF BELL

This is to certify that this document was FILED
and RECORDED in the Official Public Records
of Bell County, Texas on the date and time
stamped thereon.

COUNTY CLERK
BELL COUNTY TEXAS